UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| AKRON PAINT & VARNISH, INC., d/b/a ) <br> APV Engineered Coatings, ) <br> ) <br> ) <br> PLAINTIFF, ) <br> ) <br> vs. ) <br> ) <br> ) <br> ) <br> MIRANDA BUDD, ) <br> ) <br> ) <br> DEFENDANT. ) | CASE NO. 5:16CV2944 <br><br> JUDGE SARA LIOI <br><br> MEMORANDUM OPINION AND TEMPORARY RESTRAINING ORDER |

On December 5, 2016, plaintiff Akron Paint & Varnish, Inc. ("plaintiff" or "Akron Paint") filed a breach of contract action in the Summit County Court of Common Pleas against defendant Miranda Budd ("defendant" or "Budd"). (Doc. No. 1-1 (Complaint).) On the same day, plaintiff also filed a motion for a temporary restraining order in state court. (Doc. No. 1-3 (Motion ["Mot."]) and 1-4 (Memorandum in Support ["Mem.]).)

Defendant removed the action to federal court on December 7, 2016 on the basis of diversity jurisdiction. (Doc. No. 1 (Notice of Removal).) The Court conducted two telephonic conferences with counsel in an effort to facilitate a short-term agreement that would obviate the need for a temporary restraining order. When counsel advised that the parties were unable to enter into a stipulation, the Court took plaintiff's motion for a temporary restraining order under advisement.

Based on the information before the Court, including plaintiff's moving papers, and

pursuant to Federal Rule of Civil Procedure 65(b), the Court finds that a limited temporary restraining order is warranted for the reasons set forth below.

According to the complaint, Akron Paint "is an industrial leader in the field of the design and manufacturer of paints, paint additives, high performance coatings, caulks, seals, industrial ink, lubricants, primers, dyes, adhesives, and decals." (Complaint ¶ 3.) Its principal place of business is in Akron, Ohio, and its factory and laboratory are also located in Akron. (*Id*. ¶¶ 1, 3, 4.) Still, it does business "throughout the United States, Mexico, South America, Asia, and Australia." (*Id*. ¶ 4.)

Budd is a former employee of Akron Paint, where she was employed as a chemist (*Id*. ¶ 8.) Upon her hire, Budd's duties encompassed "product design, providing input for corrective/preventative actions, providing input on supplier selection, participation in internal audits to insure the continued improvement of the system, providing technical support and troubleshooting." (*Id*.)

During the course of her employment with Akron Paint, Budd signed an "Employee Invention and Confidential Information Agreement" and an "Agreement Not to Complete." (Doc. No. 1-1 ["Non-compete Agreement"] at 17-19; Doc. No. 1-1 ["Confidentiality Agreement"] at 21-22.) The Non-compete Agreement, which is the focus of the present motion, prohibits defendant from "engag[ing] in or contribut[ing] h[er] knowledge to any work or business that involves a product . . . , which is then directly competitive with" plaintiff's coatings products for a period of three years from the date of termination. (Non-compete Agreement at 17.) It does not, however, contain a *per se* prohibition on working for a competitor during the restrictive period. Also for the same three year period, the agreement prohibits defendant from

2

soliciting, diverting, or performing any services for any customer of plaintiff's "with respect to" the "engineered coatings business only[.]" (*Id.*) The non-compete agreement provides that its terms are governed by Ohio law. (*Id.* at 19.)

Budd voluntarily terminated her employment with Akron Paint in December, 2015. (Complaint ¶ 12.) In "late October, 2016," plaintiff discovered that defendant has taken a position as an account manager with Stahl (USA) Corporation ("Stahl (USA)"), a Dutch corporation, with its U.S. headquarters located in Peabody, Massachusetts. (Mem. at 27; *see* Complaint ¶ 12.) Stahl (USA) "holds itself out as a leader in the coatings industry." (Complaint ¶ 13.) Stahl (USA) competes with plaintiff throughout the United States and other parts of the world, and it is plaintiff's position that Stahl (USA) is its "number one competitor." (*Id.* ¶¶ 13, 14.)

According to plaintiff, defendant's employment with Stahl (USA) "has caused irreparable damage to [Akron Paint] by giving Stahl (USA) [] an unfair business advantage and by creating confusion in the marketplace." (Mem. at 27.) Plaintiff insists that to permit defendant "to approach customers and to compare and contrast the advantages of doing business with Stahl vis-à-vis [Akron Paint] [would cause] irreparable harm to" plaintiff. (*Id.* at 27-28.)

In determining whether to award temporary injunctive relief, such as a temporary restraining order, this Court must consider the following factors: (1) whether plaintiff has a substantial likelihood or probability of success on the merits; (2) whether plaintiff will suffer irreparable injury if the relief is not granted; (3) whether the injunctive relief would unjustifiably harm a third party; and (4) whether the public interest would be served by issuing the injunctive relief. *Mason Cnty. Med. Ass'n v. Knebel*, 563 F.2d 256, 261 (6th Cir. 1977); *In re: Eagle-Picher*

3

*Indus., Inc*., 963 F.2d 855, 858 (6th Cir. 1992).

With respect to the first factor, the Court finds that plaintiff is likely to succeed, at least in part, on its claim of breach of the non-compete agreement. At this stage in the litigation, little is known about Budd's current job duties and how they may or may not violate the non-complete agreement. Nonetheless, it is likely that defendant's sales position with Stahl (USA) would require defendant "to contribute [her] knowledge to [] work or business that involves a [coatings] product" that competes with a product offered by Akron Paint. Given the fact that plaintiff and Stahl (USA) are direct competitors, it is also likely that defendant's current position would cause her to have impermissible contact with one of plaintiff's customers in the coatings industry.

Still, the Court observes that some of the language of the restrictive covenant is very broad. While the agreement is limited to products of the "coatings business," it appears to prohibit any activity that "involves" these products in any way. Additionally, while the period of the restrictive covenant is limited to 3 years from the date of separation, there is no geographic limitation on the reach of the covenant. *See MP TotalCare Servs., Inc. v. Mattimoe*, 648 F. Supp. 2d 956, 963 (N.D. Ohio 2009) (identifying temporal and spatial limitations as factors to consider in determining the reasonableness of non-compete covenants under Ohio law) (citations omitted). Though plaintiff represents that both it and Stahl (USA) compete nationally and internationally, it is unclear whether their coatings products compete on this level. At this early stage in the litigation, the Court is far from convinced that plaintiff will be entitled to enforce the agreement as written.

Assuming that plaintiff can prove some violation of the agreement, the Court finds that plaintiff will suffer irreparable harm should defendant be permitted to continue to violate the

non-compete agreement. Courts have found that the breach of a non-compete agreement and the unauthorized solicitation of customers constitutes irreparable injury. *Basicomputer Corp. v. Scott*, 937 F.2d 507, 512 (6th Cir. 1992).

Third, the Court finds that the irreparable harm that plaintiff will suffer without a temporary restraining order outweighs any inconvenience defendant may suffer. Defendant was aware when she accepted employment with Stahl (USA) that she was still subject to the terms of the non-compete agreement she previously signed with plaintiff, and, as set forth below, the Court's temporary restraining order only requires defendant to limit (and not terminate) her employment with Stahl (USA). Moreover, the Court intends to schedule this matter for a preliminary injunction hearing in early 2017. Thus, any inconvenience to defendant in limiting her employment with Stahl (USA) in the interim must give way to the irreparable damage that could result from defendant's potential violation of the parties' non-compete agreement.

Fourth and finally, the Court finds that the temporary restraining order will benefit the public interest of upholding contracts. There is an interest in requiring defendant to uphold her legal obligations under the contract to the extent that those obligations do not offend governing state law. *See generally Patio Enclosures, Inc. v. Herbst*, 39 F. App'x 964, 970 (6th Cir. 2002) (public interest in enforcement of reasonable non-compete agreements).

By its motion, plaintiff seeks a temporary order prohibiting defendant from working for Stahl (USA) in any capacity until the Court can conduct an evidentiary hearing on its request for a preliminary injunction. Yet, the restrictive covenant does not preclude defendant from working for competitors; instead, it merely prohibits her from working with competitive coatings products or customers of such products. While the motion is extremely thin as to any supporting facts

5

demonstrating that defendant is in violation of her covenant, she is still bound by the agreement. Ultimately, the Court finds that the balance of the relevant factors favors the issuance of a temporary restraining order that protects plaintiff's business and proprietary interests, as defined by the parties' agreement, while permitting defendant to remain employed in some non-competing capacity at Stahl (USA). Additionally, the Court always remains free to modify any agreement to "the extent necessary to protect the employer's legitimate interest and then enforce the covenant as modified." *See MP TotalCare Servs., Inc.*, 648 F. Supp. 2d at 963 (citations omitted). Therefore, the Court finds that a temporary restraining order limited to coatings products is warranted.

> Accordingly, IT IS ORDERED that defendant is enjoined as follows:
>
> Defendant is prohibited from soliciting or servicing customers of plaintiff's engineered coatings products;
>
> Defendant is prohibited from performing any service that promotes a coatings product offered for sale by Stahl (USA); and
>
> Defendant is prohibited from using or disclosing any trade secret or confidential information of plaintiff's that defendant may have acquired during her employment with plaintiff.[1]
>
> Defendant is not, however, prohibited from working for or offering any services to Stahl (USA), to the extent such service or employment does not involve coatings products.

---

[1] There is no allegation, let alone supporting fact, to suggest that defendant has disclosed any trade secrets or confidential or proprietary information. Nonetheless, Budd remains subject to the confidentiality agreement she signed while still employed by Akron Paint.

This order is in effect for a period of fourteen (14) days. Fed. R. Civ. P. 65(b)(2).

**IT IS SO ORDERED**.

Dated: December 13, 2016

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**